FILED

2018 Oct-17  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ALBERT STEVENSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.:** |
| | ) | |
| JOHNSON BROS. CORPORATION, | ) | |
| A SOUTHLAND COMPANY, a.k.a | ) | |
| SOUTHLAND HOLDINGS, LLC, | ) | |
| | ) | **JURY DEMAND** |
| **Defendant.** | ) | |

## COMPLAINT

## I. JURISDICTION AND VENUE

1.      This is a suit to obtain relief for race discrimination and retaliation in employment, under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981.

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 (4) and 28 U.S.C. §§ 2201 and 2202.

3.      Venue is proper in that the alleged acts occurred in Jefferson County, Alabama.

## II. PARTIES

4.      Plaintiff, Albert Stevenson ("Plaintiff"), is an African-American, citizen of the United States and is a resident of Birmingham, Alabama.

5.      Defendant, Johnson Brothers Corporation, a Southland Company a.k.a. Southland Holdings, LLC ("Defendant"), is a Texas corporation, that during the events relevant to this action did business in Jefferson County, Alabama.

6.      Defendant is engaged in an industry affecting commerce and has fifteen (15) or more employees.

## III. ADMINISTRATIVE PROCEDURES

7.      Plaintiff hereby adopts and realleges paragraphs one (1) through six (6) herein above as if fully set forth herein.

8.      Plaintiff brings this action for the unlawful employment practices and acts of intentional discrimination by his employer, Defendant.

9.      This action seeks to redress unlawful employment practices resulting from the acts of Defendant, its agents, servants, and employees committed with respect to Plaintiff's employment, and for a permanent injunction restraining Defendant from maintaining a habit and/or practice of

discriminating against and/or retaliating against the Plaintiff and others similarly situated on account of racial discrimination and retaliation.

10. On January 26, 2018, within 180 days of the last discriminatory and retaliatory act of which Plaintiff complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Exhibit A).

11. Plaintiff's Dismissal and Notice of Rights was mailed by the EEOC to the Plaintiff on July 17, 2018, and Plaintiff filed suit within ninety (90) days of receipt of his Notice of Right to Sue. (Exhibit B).

12. Administrative prerequisites for filing have been satisfied, and Plaintiff is entitled to bring this action.

## IV. STATEMENT OF PLAINTIFF'S FACTUAL ALLEGATIONS AND CLAIMS

13. Plaintiff hereby adopts and realleges paragraphs one (1) through twelve (12) herein above as if fully set forth herein.

14. Plaintiff is an African-American.

15. In or around May 2017, Plaintiff was hired by the Defendant as a Project Engineer and moved from Louisiana to Alabama to obtain employment.

3

16. Plaintiff was the only African-American Project Engineer at this location.

17. Plaintiff was hired by the Defendant's Project Manager, Mr. Michael Brown.

18. Mr. Brown is Caucasian.

19. Plaintiff's immediate supervisor, Mr. Robert "Bob" Gunther, was the Assistant Project Manager.

20. Mr. Gunther is Caucasian.

21. On one occasion, Plaintiff was working in his office and Mr. Brown and his family came into the office.

22. Mr. Gunther was right outside Plaintiff's office talking to Mr. Brown's family.

23. Mr. Gunther looked at Plaintiff and said to him, "Get out of here *boy*, before I shoot you!"

24. Plaintiff was offended and shocked by Mr. Brown's racist comment, but he continued to do his work until he was done for the day.

25. Mr. Gunther singled out Plaintiff at work, spoke down to him in team meetings, and treated him differently than his other Caucasian co-workers.

26.    During the time of Plaintiff's employment with the Defendant, Ms. Patti Snider-Miller was the Defendant's Office Administrator.

27.    Ms. Snider-Miller is Caucasian.

28.    In or around July 2017 after Plaintiff left for work the day, Ms. Snider-Miller placed a sticky-note on Plaintiff's computer, which read, "What is your blood type?"

29.    Plaintiff found Ms. Snider-Miller's sticky note on his computer the next morning.

30.    Plaintiff, thinking that Ms. Snider-Miller meant an actual blood type (A, B, AB, or O), responded to Ms. Snider-Miller's obscure question by telling her that he was unsure of his blood type.

31.    Ms. Snider-Miller responded by saying, "I have that rare, good, German-blood."

32.    Plaintiff knew Ms. Snider-Miller's comment had no relevance to an actual blood type or to any administrative matters and was very offended by her Aryan/racist remark.

33.    Shortly thereafter and during a staff meeting, Ms. Snider-Miller referred to Plaintiff as "a misfit" and said "we need to keep Albert down", in front of Plaintiff's Caucasian co-workers.

34.    Plaintiff clearly understood Ms. Snider-Miller's comments as derogatory and demeaning because he was the only African-American Engineer.

35.    In or around July 18, 2017, Plaintiff texted Mr. Brown asking him if he could speak to him about Plaintiff feeling discriminated by Mr. Gunther and Ms. Snider-Miller because of his race.

36.    Mr. Brown told Plaintiff that he would said be available the next day.

37.    In or around July 19, 2017, Plaintiff stayed after work until everyone else left to meet with Mr. Brown, but Mr. Brown never met with Plaintiff.

38.    In or around the end of July 2017, Defendant hired Mr. Ronnie Honeycutt as a Project Engineer.

39.    Mr. Honeycutt is Caucasian.

40.    Ms. Snider-Miller and Mr. Honeycutt used to work together for a previous employer.

41.    After Plaintiff asked for a meeting with Mr. Brown, Mr. Brown, like Mr. Gunther, began singling out Plaintiff at work, speaking down to him in team meetings, and treating him differently than his other co-workers.

42. In or around August 3, 2017, Mr. Gunther asked Plaintiff to train Mr. Honeycutt in the work areas that were assigned to Plaintiff.

43. In or around August 9, 2017, Mr. Gunther sent an email to the team saying Mr. Honeycutt would be performing Plaintiff's assignments and that Plaintiff would have "other tasks to manage".

44. In or around August 18, 2017, Plaintiff went to Mr. Brown's office and requested a meeting to speak with him and Mr. Gunther because he was concerned he was being singled out.

45. Plaintiff went back to his desk and sat down.

46. However, within moments of Plaintiff requesting a meeting with his supervisors, Mr. Brown and Mr. Gunther, Plaintiff was called back into Mr. Brown's office.

47. In or around August 18, 2017, Mr. Brown, Mr. Gunther, and Mr. Steve Strohm (Caucasian Regional Manager) informed Plaintiff that he was being terminated.

48. Later that day, Plaintiff privately told Mr. Strohm is that "the only problem I can see here is the unspoken negative feelings about (race)".

49. After Plaintiff mentioned race to Mr. Strohm, Mr. Strohm told Plaintiff that her had a form for him to sign.

7

50.     Mr. Strohm handed Plaintiff a severance package and said "this is so you won't sue us".

51.     Plaintiff told Mr. Strohm that he didn't understand why he was being terminated and Mr. Strohm never gave him a reason.

52.     Plaintiff told Mr. Strohm that "so many people can vouch for my work" and Mr. Strohm told him "that's why I need you to sign this (severance package)".

53.     Plaintiff never had an oral or written reprimand by Defendant.

54.     Plaintiff never received a copy of Defendant's company handbook.

55.     Plaintiff never received his company truck (Chevrolet 1500 or Ford F150) and other benefits like his offer of employment contract stated, but other Caucasian Project Engineers received their trucks.

56.     Plaintiff even emailed Defendant's Ms. Rachel Sackett to receive his contracted truck, like his Caucasian co-workers, but his request was never granted.

57.     Plaintiff has reason to believe that he was paid less than his Caucasian co-workers because of his African-American race.

58.     Plaintiff was replaced by Mr. Honeycutt, Caucasian, who was less qualified and had less experience than Plaintiff.

## V.  STATEMENT OF PLAINTIFF'S CLAIMS

### COUNT ONE

#### STATEMENT OF PLAINTIFF'S TITLE VII AND 42 U.S.C. § 1981 RACIAL DISCRIMINATION CLAIMS

59.    Plaintiff adopts and realleges paragraphs one (1) through fifty-eight (58) as if fully set forth herein.

60.    This is a claim against Defendant arising under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. 1981 prohibiting race discrimination in the workplace.

61.    Plaintiff is an African-American.

62.    Plaintiff was the only black Engineer employed by the Defendant.

63.    While Plaintiff was working in his office, Mr. Gunther, Caucasian supervisor, looked at Plaintiff and said to him, "Get out of here *boy*, before I shoot you!"

64.    Plaintiff heard and was aware of Mr. Gunther's racist comments.

65.    Plaintiff was offended by Mr. Gunther's remarks.

66.    Mr. Gunther singled out Plaintiff at work, spoke down to him in team meetings, and treated him differently than his other Caucasian co-workers.

67. Ms. Snider-Miller, Caucasian and Defendant Office Administrator, placed a sticky-note on Plaintiff's computer, which read, "What is your blood type?"

68. Plaintiff, thinking that Ms. Snider-Miller meant an actual blood type (A, B, AB, or O), responded that he was unsure of his blood type.

69. Ms. Snider-Miller responded by saying, "I have that rare, good, German-blood."

70. Plaintiff heard and was aware of Ms. Snider-Miller's racist comments she made towards him.

71. Plaintiff was offended by Ms. Snider-Miller's remarks.

72. Ms. Snider-Miller referred to Plaintiff as "a misfit" to her Caucasian co-workers.

73. Plaintiff heard and was aware that Ms. Snider-Miller referred to him as "a misfit" to her Caucasian co-workers because of his race.

74. Plaintiff was offended by Ms. Snider-Miller's remarks.

75. Ms. Snider-Miller told her Caucasian co-workers that "we need to keep Albert down".

76. Plaintiff heard and was aware that Ms. Snider-Miller told her Caucasian co-workers that "we need to keep Albert down (because of his race)".

77.     Plaintiff was offended by Ms. Snider-Miller's remarks.

78.     In or around the end of July of 2017, Defendant hired Mr. Honeycutt, Caucasian, as an Engineer.

79.     In or around August 3, 2017, Mr. Gunther asked Plaintiff to train Mr. Honeycutt in the work areas that were assigned to Plaintiff.

80.     In or around August 9, 2017, Mr. Gunther sent an email to the team saying Mr. Honeycutt would be performing Plaintiff's assignments and that Plaintiff would have "other tasks to manage".

81.     In or around August 18, 2017, Plaintiff went to Mr. Brown's office and requested a meeting to speak with him and Mr. Gunther because he was concerned he was being singled out.

82.     Mr. Brown and Mr. Gunther made the decision to terminate Plaintiff.

83.     Mr. Gunther and Mr. Steve Strohm (Caucasian Regional Manager) informed Plaintiff that he was being terminated.

84.     Plaintiff never had an oral or written reprimand by Defendant.

85.     Plaintiff never received a copy of the handbook during his entire employment from Defendant.

86.     Plaintiff was replaced by Mr. Honeycutt, Caucasian, who was less qualified and had less experience.

87.    Ms. Snider-Miller and Mr. Honeycutt used to work together for a previous employer.

88.    Plaintiff never received his company truck (Chevrolet 1500 or Ford F150) and other benefits like his offer of employment contract stated, but other Caucasian Project Engineers received their trucks.

89.    Plaintiff even emailed Defendant's Ms. Rachel Sackett to receive his contracted truck, like his Caucasian co-workers, but his request was never granted.

90.    Plaintiff has reason to believe that he was paid less than his Caucasian co-workers because of his African-American race.

91.    Defendant discriminated against Plaintiff based on his race, African-American.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.    Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by Title VII of the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1866," as amended, and

42 U.S.C. §1981, as amended;

b.      Grant Plaintiff a permanent injunction enjoining Defendant, its Agents Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII of the "Civil Rights of 1964," as amended, the "Civil Rights Act of 1866," as amended, and 42 U.S.C. §1981, as amended;

c.      Grant Plaintiff an Order requiring the Defendant to make him whole by granting appropriate declaratory relief, compensatory damages (including damages for mental anguish), punitive damages, nominal damages, interest, reasonable attorney's fees, expenses, costs of this suit; and

d.      Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

## COUNT TWO

### STATEMENT OF PLAINTIFF'S TITLE VII AND 42 U.S.C. § 1981 RETALIATION CLAIMS

92.     Plaintiff adopts and realleges paragraphs one (1) through ninety-one (91) as if fully set forth herein.

93. This is a claim against Defendant arising under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. 1981 prohibiting retaliation in the workplace.

94. Plaintiff is an African-American.

95. Plaintiff was the only black Engineer employed by the Defendant.

96. While Plaintiff was working in his office, Mr. Gunther, Caucasian supervisor, looked at Plaintiff and said to him, "Get out of here *boy*, before I shoot you!"

97. Plaintiff heard and was aware of Mr. Gunther's racist comments.

98. Plaintiff was offended by Mr. Gunther's remarks.

99. Ms. Snider-Miller, Caucasian and Defendant's Office Administrator, placed a sticky-note on Plaintiff's computer, which read, "What is your blood type?"

100. Plaintiff, thinking that Ms. Snider-Miller meant an actual blood type (A, B, AB, or O), responded that he was unsure of his blood type.

101. Ms. Snider-Miller responded by saying, "I have that rare, good, German-blood."

102.   Plaintiff heard and was aware of Ms. Snider-Miller's racist comments made towards him.

103.   Plaintiff heard and was aware that Ms. Snider-Miller referred to him as "a misfit" to her Caucasian co-workers because of his race, African American.

104.   Plaintiff was offended by Ms. Snider-Miller's racist remarks.

105.    Plaintiff heard and was aware that Ms. Snider-Miller told her Caucasian co-workers that "we need to keep Albert down (because of his race)".

106.   Plaintiff was offended by Ms. Snider-Miller's racist remarks.

107.   In or around July 18, 2017, Plaintiff texted Mr. Brown asking him if he could speak to him about Plaintiff feeling discriminated by Mr. Gunther and Ms. Snider-Miller because of his race.

108.   Mr. Brown told Plaintiff that he would be available the next day.

109.   In or around July 19, 2017, Plaintiff stayed after work until everyone else left to meet with Mr. Brown, but Mr. Brown never met with Plaintiff.

110. After Plaintiff asked for a meeting with Mr. Brown, Mr. Brown, like Mr. Gunther, began singling out Plaintiff at work, speaking down to him in team meetings, and treating him differently than his other co-workers.

111. In or around the end of July 2017, Defendant hired Mr. Honeycutt, Caucasian, as a Project Engineer.

112. In or around August 3, 2017, Mr. Gunther asked Plaintiff to train Mr. Honeycutt in the work areas that were assigned to Plaintiff.

113. In or around August 9, 2017, Mr. Gunther sent an email to the team saying Mr. Honeycutt would be performing Plaintiff's assignments and that Plaintiff would have "other tasks to manage".

114. In or around August 18, 2017, Plaintiff went to Mr. Brown's office and requested a meeting to speak with him and Mr. Gunther because he was concerned he was being singled out.

115. Plaintiff went back to his desk and sat down.

116. However, within moments of Plaintiff requesting a meeting with his supervisor, Mr. Brown and Mr. Gunther, Plaintiff was called back into Mr. Brown's office.

117. In or around August 18, 2017, Mr. Brown, Mr. Gunther, and Mr. Steve Strohm (Caucasian Regional Manager) informed Plaintiff that he was being terminated.

118.   Later that day, Plaintiff privately told Mr. Strohm that "the only problem I can see here is the unspoken feelings about (race)".

119.   Only after Plaintiff said this Mr. Strohm said he had a form he needed Plaintiff to sign.

120.   Mr. Strohm handed Plaintiff a severance package and said "this is so you won't sue us".

121.   Plaintiff was never given a reason as to why he was being terminated.

122.   Plaintiff told Mr. Strohm that "so many people can vouch for my work" and Mr. Strohm told him "that's why I need you to sign this (severance package)".

123.   Plaintiff never had an oral or written reprimand by Defendant.

124.   Plaintiff never received a copy of Defendant's company handbook.

125.   Mr. Brown and Mr. Gunther made the decision to terminate Plaintiff.

126.   Plaintiff was replaced by Mr. Honeycutt, Caucasian, who was less qualified and had less experience.

127.   Defendant retaliated against Plaintiff because he complained about being discriminated because of his race, African-American.

128.   Defendant's retaliatory conduct injured Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully requests that this Court adopt jurisdiction of this action and award Plaintiff the following relief:

a.   Enter a declaratory judgment that Defendant's policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured by Title VII of the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1866," as amended, and 42 U.S.C. §1981, as amended;

b.   Grant Plaintiff a permanent injunction enjoining Defendant, its Agents Successors, Employees, Attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII of the "Civil Rights of 1964," as amended, the "Civil Rights Act of 1866," as amended, and 42 U.S.C. §1981, as amended;

c.   Grant Plaintiff an Order requiring the Defendant to make him whole by granting appropriate declaratory relief, compensatory damages (including damages for mental anguish), punitive damages, nominal damages, interest, reasonable attorney's fees, expenses, costs of this suit; and

d.    Plaintiff prays for such other, further, different or additional relief and benefits as justice may require.

**PLAINTIFF HEREBY REQUESTS TRIAL BY STRUCK JURY**

/s/ Nicole Davis Edwards
State Bar ID No: ASB-4832-B19D
*Attorney for Plaintiff*

/s/ Blake Clifton Edwards
State Bar ID No: ASB-5200-T60B
*Attorney for Plaintiff*

**OF COUNSEL:**
EDWARDS & EDWARDS
ATTORNEYS AND MEDIATORS, PLLC
3603 Pine Lane SE, Suite C
Bessemer, Alabama 35022
Tel: (205) 549-1379
E-mail: nicole@edwardsattys.com
        blake@edwardsattys.com

**PLAINTIFF'S ADDRESS**:
Mr. Albert Stevenson
c/o EDWARDS & EDWARDS ATTORNEYS AND MEDIATORS, PLLC
3603 Pine Lane SE, Suite C
Bessemer, Alabama 35022

**PLEASE SERVE DEFENDANT AT THE FOLLOWING ADDRESS:**
Johnson Bros. Corporation, a Southland Company
a.k.a. Southland Holdings, LLC
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104